## LEAKE v. SCAIEF.

(Court of Civil Appeals of Texas. Dallas. Nov. 11, 1911.)

1. BROKERS (§ 67*)—EMPLOYMENT OF BROKERS TO PROCURE EXCHANGE OF REAL ESTATE—RIGHT TO ACT FOR BOTH PARTIES.

A real estate broker may represent both parties while acting merely as a middleman to bring them together to negotiate for an exchange of their lands.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 52–54; Dec. Dig. § 67.*]

2. BROKERS (§ 86*)—EMPLOYMENT TO PROCURE EXCHANGE OF LANDS—COMMISSIONS—EVIDENCE.

In an action by a broker for commissions of a specified per cent. for procuring an exchange of real estate, evidence *held* to support a finding that there was no agreement as to which tract his commissions should be based on.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 86.*]

3. BROKERS (§ 71*)—PROCURING EXCHANGE OF REAL ESTATE—COMMISSIONS.

Where an owner employs a broker to assist him in effecting an exchange of his land for other lands, and promises him a commis-

sion of a certain per cent., and no express contract is made as to which tract shall be the basis for fixing the commission, the value of the tract taken in exchange is the basis.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. § 71.*]

4. BROKERS (§ 82*)—ACTIONS FOR COMMISSIONS—ISSUES, PROOF AND⸱ VARIANCE.

An allegation in a petition by a broker suing for a commission for effecting an exchange of lands that he was to receive a specified per cent. commission on the land received in exchange was sufficient to justify the admission of testimony that the contract was for such per cent. on the deal without any agreement as to the land which should form the basis for calculating the commission, since the rule of law fixing the land received in exchange as the basis governed.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 82.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by A. C. Scaief against W. E. Leake. From a judgment for plaintiff, defendant appeals. Affirmed.

Meador, Davis & Senter, for appellant. Wood & Wood, for appellee.

TALBOT, J. Scaief brought this suit against Leake to recover $1,000. It is alleged in plaintiff's amended original petition, in substance, among other things: That the defendant during the latter part of the year 1909 was the owner of 1,036 acres of land in Haskell county, Tex., and that one B. M. Gentry or J. J. Stine & Bro., owned 500 acres of land situated in Dallas county, Tex., known as the "B. M. Gentry farm." That plaintiff was a real estate broker, and that he, the plaintiff, on or about the 4th day of December, 1909, met the said Gentry on a train near Stamford, Tex., and was informed by said Gentry, as he, plaintiff, understood him, that he, Gentry, was the owner of about 500 acres of land situated in Dallas county, and that he desired to exchange it for western lands. That plaintiff, then knowing that the defendant, W. E. Leake, owned 1,036 acres of land in Haskell county, and that he desired to exchange it for lands in Dallas county, represented to Gentry that he, Gentry, might exchange with defendant. That plaintiff took a description of the said Gentry's land, situated in Dallas county, and on the next day communicated with defendant, Leake, and informed him that there was an opportunity to exchange his land for 500 acres in Dallas county. That defendant was favorably impressed with the proposition, and agreed with plaintiff that, if such exchange could be made, he would pay plaintiff 2½ per cent. commission on the value of the 500 acres, should plaintiff bring about such exchange, and requested plaintiff to get in communication with the owner of said Dallas county lands, to the end that they, defendant and Gentry, might meet each other and see each

other's lands, with a view to an exchange. That later it turned out that Gentry was not the owner of the 500 acres in Dallas county at that time, but had sold it to J. J. Stine & Bro. That the plaintiff got in communication with certain agents of Stine & Bro., to wit, J. F. West and W. P. White, of Dallas, and finally through them brought said J. J. Stine & Bro. and defendant together, and they made the exchange; that is, said J. J. Stine & Bro. exchanged the 500 acres, known as the Gentry land in Dallas county, for the 1,036 acres belonging to defendant situated in Haskell county. That this exchange was made about the 30th day of December, 1909. That defendant was aware all the time that the plaintiff was trying to effect the exchange through White and West, and urged its completion. Plaintiff claimed that the 500 acres of land defendant secured in the exchange was of the value of $40,000, and that he was entitled to 2½ per cent. commission on that amount. The defendant answered by general denial; and, among other things, specially answered that the plaintiff, Scaief, was seeking a recovery against B. M. Gentry for $1,000, commission alleged to be due on account of the sale or exchange of the 500 acres of land to W. E. Leake, the appellant herein; that said alleged contract with the said Gentry covered the same subject-matter as is covered by the said suit of A. C. Scaief against W. E. Leake; that the contract as alleged between A. C. Scaief and B. M. Gentry was made without the knowledge, consent, or authority of the said W. E. Leake; and that thereby the said A. C. Scaief was acting as agent, and receiving commissions, as claimed by him, from both the seller and purchaser of the same tract of land; and that therefore recovery should be denied. The case was tried before a jury, and verdict and judgment rendered in favor of the plaintiff for $984.30, and the defendant appealed.

There are but two assignments of error. The first is to the effect that the trial court erred in refusing to give a peremptory instruction, directing the jury to return a verdict in favor of the defendant. It is contended that the court erred in refusing this charge, because it appears from the evidence that the plaintiff had a contract with Gentry for 2½ per cent. commission for bringing about the exchange or sale of his 500 acres of land in Dallas county, Tex., at the time he, the said A. C. Scaief, made his alleged contract with the defendant, W. E. Leake, for the purchase of said same 500 acres of land, it appearing that the agency of A. C. Scaief for both the owner and seller of said 500 acres of land was unknown to the defendant, W. E. Leake, and for the further reason that the allegations of the plaintiff's petition and the testimony introduced in

support thereof do not correspond. The second assignment is: "The trial court erred in refusing the defendant's special instruction No. 3, as follows: 'If you find and believe from the evidence that the plaintiff, A. C. Scaief, had a contract with the defendant, W. E. Leake, if any, for 2½ per cent. commission without reference to the sale or exchange of the 500 acres of land, known as the Gentry farm, or without reference to any amount or value, you will find for the defendant, W. E. Leake,' for the reason that the plaintiff's pleadings were that the contract was that he should receive 2½ per cent. commission on and for the purchase of said 500 acres of land, whereas the testimony was that the contract was 2½ per cent. on the deal, the allegations of the petition and the testimony introduced thereunder not corresponding." Our conclusion is that both of these assignments should be overruled. The evidence shows that B. M. Gentry did not own the land situated in Dallas county, known as the Gentry farm, at the time the contract claimed by appellant to have been made by him with appellee was entered into; and, besides, we have very grave doubts of the sufficiency of the evidence to support a finding that the appellee had a contract with B. M. Gentry to the effect that Gentry was to pay him a commission of 2½ per cent., or any other sum, in the event he brought about an exchange of the tracts of land involved in the suit. If, however, it be conceded that the evidence would have authorized such a finding and that Leake was not aware of such contract, certainly it was not of such a conclusive character as to warrant the court in taking the question from the jury. Appellee testified: "In all of this correspondence I was representing or acting for Mr. Leake. I was not acting for any one else. My main object in all of this correspondence was to get an exchange of that land for the piece of black land. I was not working on this matter for anybody except Mr. Leake, but it is a fact that a suit was filed against Mr. Gentry for the same matter in another court. This paper that you have shown me is a certified copy of the petition that I filed. Wood & Wood were my attorneys in this case. I sued for $1,000 for the sale of the property, for the sale of the 500 acres from Gentry. * * * I did not claim that Mr. Leake made me his exclusive agent in handling this land." The statement of facts before us shows that a certified copy of the petition in a suit styled "No. 6927–C" and styled "A. C. Scaief versus B. M. Gentry," was introduced in evidence, but this petition was not copied in the record, nor is the substance of its allegations stated.

The testimony of B. M. Gentry, offered by the defendant, is as follows: "I scarcely know A. C. Scaief, because I never met him but once, and that was at night on a passenger train of the Wichita Valley Railway between the towns of Seymore and Haskell. This is the first time and the last time I ever met Mr. Scaief. I never at any time had any connection of any kind whatever with A. C. Scaief, neither did I have any dealings with him at any time or anywhere. I never placed my lands in any one's hands for sale between September 1, 1909, and January 1, 1910." On cross-examination he testified: "It is not a fact that I said anything to A. C. Scaief about paying him a commission of 2½ per cent. or any per cent. whatever to effect an exchange, because, in the first place, I had no Dallas county lands at that time for exchange or sale, and, in the second place, I did not know that A. C. Scaief was a real estate agent." The foregoing is all of the material testimony upon the question.

[1] That an exchange of the lands mentioned in appellee's petition was brought about by his efforts substantially as alleged in the petition, and that appellant had contracted and agreed to pay him a commission of 2½ per cent. therefor, is abundantly established by the evidence, and does not seem to be questioned on this appeal. The proposition contended for is that "it is contrary to public policy for a real estate agent to represent both the purchaser and seller in a land deal, unless it be with the knowledge and consent of all parties interested, and where said real estate agent represents both seller and purchaser, without such knowledge and consent, he is not entitled to maintain a suit and sustain a recovery against the purchaser for commissions alleged to be due on account of making the sale." This is substantially a correct statement of the law upon the subject, but it is also a well-established principle that a person may act as an agent of both parties to an exchange of lands, if his duties to each are not such as to require him to do incompatible things. Bass et al. v. Tolbert, 51 Tex. Civ. App. 437, 112 S. W. 1077; Mechem on Agency, § 67. This principle recognizes that there is a clear and well-defined distinction between an agent to buy or sell, and one acting merely as a middleman to bring the parties together, in order to enable them to make their own contracts. It is clear, we think, from the record in this case that each party intended to view the other's land and to negotiate and make themselves whatever contract that should be made in regard to an exchange of said lands. This the appellant and the Stine Bros., who were at the time the owners of the Gentry farm, did, and the evidence shows that such was the intention of appellant and B. M. Gentry, had they made the exchange. It is obvious that all the appellee was requested to do by either appellant or Gentry, or that he attempted to do, was to endeavor to get them together that they might negotiate and ef-

fect, if they could, an exchange of their lands. This being true, if the Gentry farm, situated in Dallas county, had in fact belonged to B. M. Gentry and he had secured the services of appellee to assist in bringing the said Gentry and appellant together, to the end that they might see each other's land, and agreed, in the event they should agree upon terms and make an exchange of the same, to pay appellee a commission, such contract would not defeat appellee's right to recover of appellant upon a similar contract. Neither of such contracts required the appellee as agent to do any act inconsistent with or against the interest of either of his principals. Where a person has been employed as a broker to buy or sell goods, the case is different. In such a case it would be a fraud for the agent to conceal his agency for the one from the other. Rupp v. Sampson, 16 Gray (Mass.) 398, 77 Am. Dec. 416.

[2] The appellant was neither entitled to peremptory instruction referred to, nor to the special instruction requested by him, and made the basis of his second assignment, on the ground that the allegations of the appellee's petition and the proof offered in support thereof did not correspond, in that the contract alleged was that appellee "should receive 2½ per cent. commission on and for the purchase of said 500 acres of land," whereas the testimony was that the contract was 2½ per cent. on the deal. Appellee alleged that he was to receive 2½ per cent. commission on the value of the 500-acre tract situated in Dallas county, should his efforts bring about an exchange of the lands; and he testified that the appellant agreed to pay him 2½ per cent. commission, but did not say on which tract. The testimony of the appellant is to the effect that he would allow him 2½ per cent. commission on the value of the 1,036-acre tract owned by him in Haskell county. This testimony raised the issue as to whether or not there was any stipulation as to which tract the commission was based on, and was sufficient to justify a finding, as contended by appellee, that there was none. At the instance of appellant, and evidently in view of his testimony upon the question, the court instructed the jury as follows: "If you find from the evidence that the plaintiff, A. C. Scaief, had a contract with defendant, W. E. Leake, if any, for a commission of 2½ per cent. on the value of the 1,036 acres of land owned by Leake, if in fact he did own it, you will return a verdict for the defendant." The verdict of the jury in appellee's favor necessarily embraces a finding that it was not the contract that appellee was to receive the commission agreed to be paid him based on the value of the Haskell county land, but that no express agreement was made as to which tract his commission should be based on.

[3] The law is, therefore, as we understand it, that when an owner of land employs a real estate broker to assist him in effecting an exchange of his land for other lands, and promises him a commission of a certain per cent., and no express contract is made as to which tract shall be the basis for determining the amount of the commission, the value of the tract taken in exchange shall be the basis. This view is sustained, we think, by reason and authority. Davidson v. Wills, 96 S. W. 634. The effect of the decision in the case cited is that, in the absence of stipulation as to which tract a real estate broker's commission is to be based on, the law is that it should be based on the value of the land taken in exchange. In other words, it seems to be the rule, as argued by counsel for appellee, that a promise to pay a commission to a broker in case an exchange of lands is made includes a promise that the amount of the commission shall be arrived at by a calculation based on the value of the land secured in the exchange.

[4] So that in this case, there being no express contract as to which tract the commission was to be based on, the appellee's allegation to the effect that the appellant contracted to pay him 2½ per cent. of the value of the land taken by him in exchange for his land, while sufficient to admit proof of an express contract to that effect, was but an allegation of the legal effect of the facts pleaded and established by the verdict. Therefore we hold there was no such variance in appellee's allegations and proof as to require a reversal of the case.

The judgment of the court below is affirmed.